RECEIVED IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
2007 JAN -3 A 9: 43 NORTHERN DIVISION

2:07CV 0009- MHT

DEBRA P. HACKETT, CL GRADY GIBSON,
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

PETITIONER

-V-

RALPH HOOKS,
Warden of St. Clair Correctional Facility;
TROY KING, Attorney General of the State of Alabama,

RESPONDENTS

PETITION FOR WRIT OF HABEAS CORPUS BY A PRISONER IN STATE CUSTODY

JENNY R. RYAN
CROWNOVER AND STANDRIDGE
2600 7th Street
Tuscaloosa, Alabama 35401

Attorney for Petitioner

PETITION FOR WRIT OF HABEAS CORPUS

BY A PRISONER IN STATE CUSTODY


Comes now the Petitioner herein, Grady Gibson, by and through his undersigned attorney, and makes application to this Court for a writ of habeas corpus pursuant to 28 U.S.C. Section 2254. Petitioner Gibson, whose prison number is 147934 K-9, is presently confined in the St. Clair Correctional Facility in Springville, St. Clair County, Alabama. Petitioner respectfully shows as follows unto this Honorable Court:


PROCEDURAL HISTORY


1.    On September 16, 1987, Petitioner Gibson was sentenced to life imprisonment without the possibility of parole by the Circuit Court of Butler County, Alabama, sitting in Greenville, Alabama. The offense of which Gibson was convicted was capital murder.


2.    Petitioner was charged with capital murder in a one count indictment, to which he entered a plea of not guilty.


3.    Petitioner was tried by a jury, and testified in his own behalf at the trial.


4.    Following his conviction, Gibson appealed to the Court of Criminal Appeals of

2

Alabama. On July 21, 1989, that Court affirmed Gibson's convictions and sentence, Gibson v. State, 555 So.2d 784 (Ala. Crim. App. 1989).

5.    On July 7, 1988, while Gibson's direct appeal to the Alabama Court of Criminal Appeals was pending, he filed a post-conviction petition challenging his conviction, pursuant to Rule 20 of the Alabama Temporary Rules of Criminal Procedure, The petition was based upon newly discovered evidence, and asserted that the prosecution had willfully suppressed evidence favorable to Gibson. An evidentiary hearing on the petition was held in the Butler County Circuit Court, which denied the petition on November 4, 1988. Gibson appealed to the Alabama Court of Criminal Appeals from this adverse ruling.

6.    The Court of Criminal Appeals dismissed Gibson's appeal, on the ground that his petition for post-conviction relief could not be entertained while his direct appeal was pending, and was therefore premature Gibson v. State, 547 So.2d 1196 (Ala. Crim.App. 1989).

7.    On March 14, 1990, following the exhaustion of his direct appeal, Gibson filed another post-conviction challenge to this conviction and sentence pursuant to Rule 20 of the Alabama Temporary Rules of Criminal Procedure. This post-conviction petition was identical to the previous one, asserting as its grounds the suppression by the State of evidence favorable to Gibson. The Circuit Court of Butler County denied

3

this petition without an evidentiary hearing on May 11, 1990, and Gibson appealed to the Alabama Court of Criminal Appeals.

8.    The Court of Criminal Appeals affirmed the circuit court's denial of Gibson's Rule 20 petition on November 30, 1990.  Gibson v. State, 580 So.2d 38 (Ala.Crim. App. 1990).  Gibson then appealed to the Supreme Court of Alabama for a writ of certiorari, which initially granted the writ.  On May 31, 1991, the Alabama Supreme Court quashed the writ of certiorari as improvidently granted.

9.    On October 17, 1991, a petition for Writ of Habeas Corpus was filed in the United States District Court Middle District of Alabama by Gibson.  In it he asserted that the prosecution had suppressed exculpatory evidence.

10.   On August 22, 1994 a Rule 32 petition was filed with the Butler County Circuit Court while the petitioner's Writ of Habeas Corpus continued to move forward in this Court.

11.   The petitioner's Federal Habeas Petition was dismissed without prejudice on January 11, 1995 so that he could pursue all claims in his state Rule 32 Petition.

12.   The Circuit Court of Butler County dismissed Petitioner's Rule 32 Petition on January 28, 2005.

4

13.    Petitioner timely appealed on to the Alabama Court of Criminal Appeals who affirmed the trial court on January 27, 2006.

14.    Petitioner was denied rehearing on February 24, 2006.

15.    Petitioner appealed to the Alabama Supreme Court on March 8, 2006.

16.    The Alabama Supreme Court denied the writ and issued a certificate of judgment on June 9, 2006.

17.    Other than the foregoing, Gibson has filed no petitions, applications, or motions in any state court with respect to the judgment herein attacked.

18.    This petition represents Gibson's first and only challenge to his conviction and sentence filed in federal court.

19.    This petition is timely filed as the Petitioner's initial Habeas was filed four and a half months after the Alabama Supreme Court quashed its writ of certiorari and that Habeas was dismissed without prejudice. This Habeas is filed seven months after the Alabama Supreme Court denied the writ of certiorari on the other appealable issues and within the time allowed see Artuz v. Bennett, 531 U.S. 4, 8-9 (2000).

5

20.    Gibson does not now have any petition or appeal pending in any court, either state or federal, as to the judgment herein attacked.

21.    Gibson has been represented by this attorney since the appeal of his Rule 32 petition to the Alabama Court of Criminal Appeals filed on January 26, 2006.

22.    Gibson does not have any future sentence to serve after the sentence imposed by the judgment herein attacked, nor is Gibson presently serving any other sentence.

GROUNDS FOR RELIEF AND SUPPORTING FACTS

A.

THE PROSECUTION SUPPRESSED EVIDENCE FAVORABLE TO PETITIONER
IN VIOLATION OF PETITIONER'S RIGHT TO DUE PROCESS OF LAW UNDER THE
FIFTH AND FOURTEENTH AMENDMENTS.

23.    Gibson was indicted for the murder of Dana Hart. Ms. Hart was last seen on February 28, 1985, and her decomposed body was discovered on March 14, 1985. Prosecutors argued that Gibson must have killed Ms. Hart on the night of February 28, 1985. In fact, had Ms. Hart been killed at any other time, the murder could not have been committed by Gibson. The State specifically argued this theory of the evidence to the jury, contending that Ms. Hart had been killed by Gibson and his codefendant, Eddie Hart, on the night of February 28, 1985, and admitting that Gibson and his codefendant could not have accomplished the murder at any other

6

time. An appendix to this petition has been submitted con-currently herewith; the appendix contains those portions of the trial transcript reflecting the prosecution's argument in this regard.

24.    On March 19, 1985, an acquaintance of Dana Hart, a Ms. Dottie Ragsdale, was interviewed by agents of the Alabama Bureau of Investigation (ABI), which is the investigative arm of the Alabama State Troopers. Further interviews with Ms. Ragsdale were conducted on March 21, 1985, March 28, 1985, and April 11, 1985. On all four occasions, Ms. Ragsdale informed the law enforcement officers that she had seen Dana Hart alive on March 1, 1985, which would have been impossible under the State's theory of Gibson's guilt advanced at trial. On each occasion, Ragsdale related that Dana Hart had come by her home on March 1, 1985, and that the two had talked.

25.    Each of these ABI interviews with Ms. Ragsdale was made the subject of an ABI memorandum. The memoranda reflect that Ms.Ragsdale was certain of the date when she had seen Dana Hart. The memoranda also contain numerous details which Ms. Ragsdale recalled of Dana Hart's visit with her. Although the opinion of the Alabama Court of Criminal Appeals affirming the dismissal of Gibson's petition for post-conviction relief erroneously refers to the existence of but one memorandum, 580 So. 2d at 40,41, there are actually four separate memoranda, each reflecting a separate interview. All four memoranda are reproduced in full in the appendix

hereto.

26.    The existence of these memoranda was never revealed to Gibson or his attorneys before or during his trial. Further, the prosecutors were aware of the existence of the memoranda, as was demonstrated by the uncontradicted evidence at the evidentiary hearing held on Gibson's post-conviction petition.

27.    The Court of Criminal Appeals found as a fact that Gibson was never furnished with the memoranda (erroneously described as one memorandum) of the Ragsdale interviews. 580 So. 2d at 41. Instead, the Court of Criminal Appeals felt that the defendant must have known of such statements since he was an ABI agent himself. Regardless, the memoranda were within the ambit of pretrial discovery requests for exculpatory evidence made by Gibson, which requests were granted by the Circuit Court of Butler County. As noted above, the memoranda contained numerous details of Ms. Hart's visit with Ms. Ragsdale, in addition to the mere fact that the visit was on March 1, 1985. As is more fully discussed in the supporting brief submitted with this petition, both the memoranda themselves, and the information contained therein, should have been  produced by the prosecution in order to prevent Gibson's trial from being fundamentally unfair. At the time of Gibson's trial, over two and one-half years after Dana Hart's disappearance, Dottie Ragsdale could not recall the date that she had seen Dana Hart, and for that reason, was not called to testify. The suppressed memoranda, and their detailed contents, could have been used to refresh Ms. Ragsdale 's recollection, and in any event, Ms. Ragsdale could have testified that

8

at the time she gave the statements to the ABI, she was certain of the facts contained therein.

28.    The ABI also collected statements from an individual living near where the body of Dana Hart was found.  Mr. Bernard Stallworth indicated to the ABI in statements later converted to a memorandum by the ABI that he saw suspicious activity in the area where Dana Hart's body was found on March 1st or 2nd at a time when appellant Gibson has a solid alibi.

29.    The prosecution did not turn over the deal they made with witnesses to testify against Grady Gibson in exchange for charges against them being dropped.

30.    The prosecution failed to turn over a report of a forensic chemist which materially contradicted his trial testimony and indicated that the hair in Dana Hart's hand was not consistent with either defendant or the victim.

31.    The ABI collected statements from an individual who walked in the area where the body was found collecting cans regularly. Mr. Henry Skipper indicated to the ABI in statements later converted to a memorandum that on March 1, 1985 he walked directly in the area where Dana Hart's body was later found and did not see a body.

9

32.    The prosecution failed to tun over the Department of Public Safety memorandum indicating that Sergeant John Perdue's investigation had led him to believe that Gibson could not have committed the murders based on Dana Hart being seen alive on March 1, 1985.

33.    The prosecution failed to turn over Department of Public Safety memos indicating other individuals had claimed to have murdered Dana Hart.

B.

GIBSON WAS DEPRIVED OF DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS WHEN THE STATE COURT TRIAL JUDGE STATED AS A MATTER OF FACT, IN THE PRESENCE OF THE JURY, THAT HE HAD REVIEWED PRIOR STATEMENTS AND GRAND JURY TESTIMONY, WHICH WERE NOT IN EVIDENCE, OF TWO CRUCIAL PROSECUTION WITNESSES, AND FOUND NO INCONSISTENCIES WITH THEIR TRIAL TESTIMONY

34.    Charles Costner and Rose Pogue were crucial witnesses against Gibson. They testified to incriminating remarks allegedly made by Gibson prior to the disappearance and murder of Dana Hart. During the trial, Gibson's counsel attempted on several occasions to obtain pretrial statements and grand jury testimony by Costner and Pogue, for impeachment purposes.

10

35.    The prosecution delivered these statements and testimony to the trial judge for his in camera review. On two separate occasions during the trial, when defense counsel requested production of the testimony and statements, the trial court stated as a matter of fact, in the presence of the jury, that it had reviewed the documents in question and found no inconsistencies with the witnesses' trial testimony: "I have reviewed them. There is no inconsistent statements at this point"; "I have checked them here. I don't find any inconsistency". 555 So. 2d at 793.

36.    These documents were not in evidence, and were never introduced into evidence. Defense counsel subsequently moved for a mistrial on the ground that the trial court's statements constituted an impermissible comment on the evidence, which motion was denied.  As will be noted subsequently, the documents did, in fact, contain material inconsistencies with the witnesses' trial testimony, apparently overlooked by the trial judge.

37.    The credibility of Costner and Pogue was crucial to the prosecution's case. The comments of the trial court unconstitutionally supported their credibility, by informing the jury that matters not in evidence demonstrated their rendition of the facts to have at all times been consistent.


C.

GIBSON WAS DEPRIVED OF DUE PROCESS OF LAW UNDER THE FIFTH AND

11

FOURTEENTH AMENDMENTS WHEN THE PROSECUTION AND THE TRIAL

COURT REFUSED TO DISCLOSE PRIOR GRAND JURY TESTIMONY OF TWO

CRUCIAL PROSECUTION WITNESSES WHICH WAS MATERIALLY INCONSISTENT

WITH THEIR TRIAL TESTIMONY.

38.    The aforesaid grand jury testimony was inconsistent with the trial testimony of
Costner and Pogue in several material respects. The prosecution refused to disclose
the testimony. The justification asserted for this nondisclosure was that Gibson could
not prove that the documents contained any inconsistent statements, even though the
prosecution was obviously well aware of the inconsistencies.

39.    The trial court, after reviewing the testimony, denied disclosure, although making
it a court's exhibit for review on direct appeal.  The testimony is reproduced in full
in the appendix hereto.

40.    Gibson was thereby deprived of impeachment evidence which would have materially
affected the credibility of two critical prosecution witnesses.

D.

GIBSON WAS DEPRIVED OF DUE PROCESS OF LAW UNDER THE FIFTH AND

12

FOURTEENTH AMENDMENTS WHEN THE PROSECUTOR ASSERTED, AS A

MATTER OF FACT, IN THE PRESENCE OF THE JURY, THAT HE HAD

"FRAMED" A MAN IN A DRUG CASE AND PAID $20,000.00 IN SETTLEMENT OF A

RESULTING LAWSUIT.

41.     As noted above, Gibson was an ABI agent.  His primary duties involved undercover
        narcotic work.  During his cross examination of Gibson, the prosecutor asserted, as
        a matter of fact, that Gibson had "framed" a man for selling drugs, and that he had
        paid $20,000.00 in settlement of a resulting lawsuit.

42.     No evidence of these improper facts was ever introduced, apart from the
        prosecutor's assertions, which Gibson denied.

43.     These statements of the prosecutor directly asserted the existence of facts outside
        the evidence which showed that Gibson had committed a collateral bad act, of no
        relevance whatsoever save for the improper purpose of showing Gibson's bad
        character and propensity for wrongdoing.

E. GIBSON HAS BEEN DEPRIVED OF DUE PROCESS OF LAW BECAUSE HIS
   CONVICTION STANDS ON TESTIMONY THAT HAS BEEN RECANTED.

44.     Petitioner further submits that crucial testimony against the defendant has been
        recanted and likewise should be viewed as new evidence.

13

F.

## GIBSON HAS BEEN DEPRIVED OF DUE PROCESS BECAUSE OF THE STATE'S REFUSAL TO DO EXCULPATORY DNA TESTING IN THIS CASE

45.    DNA evidence exists that has never been tested because such testing did not exist at the time of the murder of Dana Hart.


46.    This evidence could exonerate Gibson and should be tested.


### PRAYER FOR RELIEF


WHEREFORE, the premises considered, your Petitioner, Grady Gibson, respectfully prays that this Court will:

(a) order the Respondents to file an answer to this petition;

(b) afford Petitioner an opportunity to reply to said answer, and to any other responses filed by Respondents;

(c) grant Petitioner an evidentiary hearing on the averments of this petition;

(d) issue a writ of habeas corpus granting Petitioner relief from his unconstitutionally obtained conviction and sentence; and

(e) grant Petitioner such other and further relief to which he may be entitled in this proceeding.

14

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 28th day of November 2006.

_Grady Gibson_
GRADY GIBSON

_____
JENNY R. RYAN    (RYA011)
CROWNOVER & STANDRIDGE
2600 7th Street
Tuscaloosa, Al 35401